## IDA E. DOAN

### v.

## JULIUS C. HOSTETLER et al.

*Opinion filed June 23, 1905.*

1. DEEDS—*what sufficient delivery of a deed.* A deed acknowledged by the grantor and handed by him to the officer who took the acknowledgment and by him handed to one of the grantees in the grantor's presence is well delivered, notwithstanding it is agreed the deed shall not be recorded until the grantor's death.

2. SAME—*effect of taking insurance on property conveyed in grantor's name.* The fact that after a deed was executed the property was insured in the grantor's name has but little weight upon the question of the delivery of the deed, where it was understood between the parties that the transfer should not be made public, for family reasons, until the grantor's death.

APPEAL from the Circuit Court of Richland county; the Hon. E. E. NEWLIN, Judge, presiding.

H. G. MORRIS, and ALLEN & FRITCHEY, for appellant.

R. B. WITCHER, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Christian Hostetler died in Richland county on June 11, 1904, and on that day two warranty deeds executed by him were filed for record in the office of the recorder of said county. One of the deeds was dated February 2, 1901, and conveyed to his daughter Ida E. Doan, the appellant, and Amos W. Doan, her husband, a tract of land containing forty-seven acres, and the other was dated April 8, 1903, and conveyed to said Ida E. Doan a tract of seventy-seven acres, both in said county. These were all the lands which Christian Hostetler had owned, and at his death he left a comparatively small amount of personal property. He left

two sons, three married daughters, including the appellant, and nine grandchildren, the children of a deceased daughter, as his heirs-at-law. The appellees are the heirs, excepting appellant, and they filed their bill of complaint in this case on November 11, 1904, in the circuit court of Richland county, against appellant and her husband, asking the court to set aside and declare void as a cloud upon the title of the appellees the said deeds of conveyance, upon the alleged grounds that at the time they were executed Christian Hostetler was mentally incapacitated from transacting ordinary business and that neither of the said deeds was delivered by him. An answer and a replication thereto having been filed, the cause was heard, and the court entered a decree finding that at the time of the execution of each of the deeds Christian Hostetler was of sound mind, and with full mental and legal capacity to make, execute and deliver said deeds; that the deed executed on February 2, 1901, was delivered and vested title to the premises therein described in the grantees, but that Christian Hostetler did not deliver the deed to the appellant dated April 8, 1903, nor authorize the delivery thereof. The last mentioned deed was therefore declared null and void and set aside as a cloud upon the title of appellees, and appellant was ordered to deliver it up to be canceled. The costs were equally divided between the parties. Appellant prayed and perfected an appeal from that part of the decree setting aside the deed of April 8, 1903, in which she was grantee. Appellees did not pray an appeal from that portion of the decree adverse to them nor assign cross-errors, and the correctness of the decree in that respect is not questioned.

It appears to us that the decree is against the clear weight and preponderance of the evidence. Nearly all the testimony came from parties directly interested in the suit, and the testimony of the disinterested witnesses showed that the deed was delivered. It was in the possession of the grantee, and what evidence there was tending to show that it was not

delivered applied equally to the deed of 1901, which the court held was delivered and was proved to have been delivered, so that the fact is not now controverted. Christian Hostetler lived on the seventy-seven acre tract of land described in the deed up to November, 1900. His wife had died after an illness of eight or nine years, during which time his daughter, the defendant, although married and living with her husband at some distance from her parents, took the principal care of them and did most of the housework. She was in the regular habit of going back and forth and doing cooking, washing and other work for them, and she was their main dependence for many years. After the death of his wife Christian Hostetler went to live with defendant and her husband in November, 1900. He remained with them about three years, when they all moved back on his farm which is in question in this suit. On April 7, 1903, when Mr. Hostetler was returning from an election in Olney, he got out of his buggy to fix his harness but fell down and could not get up. Neighbors came to his aid, to whom he explained the circumstances and he was conveyed home. His mind was perfectly clear and unaffected, but he was partially paralyzed and physically disabled. The next day the defendant Amos W. Doan started to Olney and met Bryant Higgins, a neighbor, who had been county surveyor and justice of the peace. He told Higgins that Mr. Hostetler had sent him to Olney for G. A. Keller to write a deed for the farm to himself and Ida, his wife. Higgins told him he could write the deed and they could get Esquire Arnold to take the acknowledgment, and that it would be better to make the deed to the daughter, the defendant Ida Doan. He wrote the deed and gave it to Mr. Doan, who said that Mr. Hostetler did not want it recorded as long as he lived. Higgins suggested to Mr. Doan to have the deed recorded and to leave his name out. Mr. Doan called on Arnold, the justice of the peace, to go to the house and take the acknowledgment. Mr. Hostetler was eighty-one years old, and Ar-

nold testified that he found him sitting in his chair at home; that he had considerable conversation with him; that his mind was clear, and that he told him the circumstances of the stroke of paralysis when coming from Olney. Mrs. Doan was not in the room, and Arnold then had Mr. Doan read the deed, and asked Hostetler if that was the way he wanted it. Hostetler said it was, and then Arnold took the paper and read it two or three lines at a time, and each time asked Hostetler if that was the way he wanted it, and he said it was. The consideration stated was as follows: "For and in consideration of the sum of $100 and my fatherly love and affection and in consideration of what she has done for me." After the deed had been twice read, as stated, Arnold asked Hostetler if he could sign his name, and he replied that he did not know whether he could or not. He tried it on a separate piece of paper, but his hand was shaky and the name was so badly written that Arnold suggested to him to make his mark. The deed was duly acknowledged, and the justice then handed it to Mr. Doan in the presence of Mr. Hostetler, who was sitting at his right hand. This evidence established the delivery of the deed, and it came from a wholly disinterested source. The defendants testified that Mr. Doan took the deed to his wife and handed it to her, who put it with the other deed, which had been delivered in 1901, in her husband's trunk, where it remained until it was taken out and recorded, and that the reason neither of the deeds was recorded was that Mr. Hostetler requested they should not be recorded during his lifetime, for the purpose of avoiding trouble.

As against this evidence there was testimony of some of the complainants or their husbands of alleged admissions by defendants at a meeting at defendants' house on August 1, 1904. That testimony was, that Mr. Doan said the reason the deeds had not been recorded was that they belonged to Mr. Hostetler, and he retained possession of them as long as he lived. One of the witnesses, stating the same conver-

sation, said that she asked Mr. Doan why he did not have the deeds recorded, and he replied, "You would have had them recorded, but we could wait," and that Mrs. Doan said that her father reserved the right to keep the deeds while he lived. They testified that when Mr. Doan was asked the question, "Couldn't you have got them?" he replied, "We were patient; we waited until father was gone." These statements alleged to have been made by the defendants were denied by them, and they testified that the conversation related to recording the deeds, and that the statement made was that Mr. Hostetler did not want them recorded because he did not want the thing to come up then and make trouble. If these alleged admissions proved that this deed was not delivered they also proved that the prior deed was not, and yet there was clear and undisputed evidence that the first deed was delivered. All the probabilities are that the version of the conversation given by the defendants was the correct one, and that the statements made were with reference to recording, and not delivery. After the deed was executed Mr. Hostetler signed an application for insurance of the buildings but Mr. Doan paid the premium, and if it was intended to not give notice of the transfer, the fact that the application was in his name would have but little weight as tending to show that the deed was not delivered.

There is no other evidence of any importance tending to sustain the decree. The evidence proved that Mr. Hostetler was fully capable of executing the deed; that he made it in consideration of his love and affection for his daughter and for her long and faithful service, and that it was delivered.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to dismiss the bill.

*Reversed and remanded.*